IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| EJIKE ANYADIKE, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 7:15-cv-00157-O |
| | § | |
| VERNON COLLEGE et al., | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Plaintiff's Motion for Ex Parte Temporary Restraining Order Pending Hearing for Preliminary Injunction (ECF No. 10), filed November 19, 2015; Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 25), filed December 10, 2015; Plaintiff's Reply Brief ("Response") (ECF No. 29), filed December 16, 2015; Defendants' Sur-Reply ("Reply"), filed December 17, 2015;[1] Defendants' Brief on Exhaustion of Remedies (ECF No. 35), filed January 5, 2016; and Plaintiff's Supplemental Brief (ECF No. 36), filed January 5, 2016. The Court held a hearing on this matter on December 21, 2015 (hereinafter "the Hearing"). *See* ECF No. 31. In considering the Hearing testimony and reviewing Plaintiff's Motion, related briefing, and applicable law, the Court finds that Plaintiff's Motion should be and is hereby **DENIED**.

## I.    BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint. Am. Compl., ECF No.

---

[1] In preparation for the Hearing, the Court ordered Defendants to brief the issues raised in the Amended Complaint, and Plaintiff to provide "any reply to Defendants' briefing." *See* Order, Dec. 4, 2015, ECF No. 24. Defendant's briefing took the form of a Motion to Dismiss for Failure to State a Claim. Defs.' Mot. Dismiss, ECF No. 25. Plaintiff's Reply Brief and Defendants' Sur-Reply are thus characterized as "Response" and "Reply" to reflect their relation to Defendants' Motion to Dismiss. However, the Court is only ruling on Plaintiff's Motion seeking a preliminary injunction at this time.

9.   Plaintiff Ejike Anyadike ("Anyadike") matriculated into the Licensed Vocational Nursing Program ("the LVN Program") at Defendant Vernon College in the Spring 2015 semester. *Id.* ¶¶ 16, 20.   On June 8, 2015, Anyadike informed Defendant Pamela Rotz ("Rotz"), the Assistant Coordinator of the LVN Program, that he had become ill with a stomach ailment. *Id.* ¶ 23.   Because "*under dubious circumstances*, [he had] accrued 54 hours toward the maximum 60 hours of [absences] allow[ed] per the LVN attendance policy" ("the Attendance Policy"), Anyadike requested he be allowed to attend the clinical session that day in order to "remain under the 60-hour limit" set forth in the Vernon College Vocational Nursing Program Student Handbook (the "LVN Handbook"). *See id.* ¶ 25 (emphasis in original).   Other than his absences, Anyadike was on track to graduate from the LVN Program in December 2015. *Id.* ¶¶ 21–22.   Rotz ordered Anyadike not to attend the clinical session because of his illness and also told him "that he was being dismissed from the [Program] for not attending his clinical session and thus violating the attendance policy." *Id.* ¶¶ 26–27.   Anyadike claims that Defendant Sherrie Denham ("Denham"), the LVN Program Director, informed him he would have to apply for reinstatement to be considered for conditional readmission. *See id.* ¶ 29.

Anyadike applied for reinstatement, and was offered conditional readmission if he would sign an agreement "allow[ing] him to be summarily dismissed on a permanent basis should he breach . . . by accruing another hour of missed time regardless of the underlying circumstance." *Id.* ¶ 30. Anyadike refused to sign what he considered to be an unconstitutional adhesion contract, and has remained dismissed from the LVN Program to date. *See id.*   In his Amended Complaint, Anyadike declared his intent to relocate to New York City to begin an advanced nursing program during the Spring 2016 semester, making him unable to continue his education at Vernon College past the Fall 2015 semester. *See id.* ¶ 32.   Anyadike thus claimed he "has suffered irreparable harm" because

2

Defendants' actions prevented him from graduating on time. *Id*. ¶ 33.

At the Hearing, Anyadike admitted that this alleged imminent harm has now been realized, as his class has graduated. However, he clarified that he now seeks to avoid "a situation where he winds up having to start from a complete blank slate, lose all of his prior credits, all of the money that he's put in, all of the grades." Hr'g Tr. at 4. He requests retroactive reinstatement to June 8, 2015, in order to retain all academic credit earned before his dismissal. He seeks other options for relief, such as having his financial aid reinstated from the Summer and Fall 2015 semesters, supervision in completing his clinical hours at an individualized pace, tutorial assistance, and related requests. *See id*. at 5–9.

On November 3, 2015, Anyadike filed his Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support (ECF Nos. 3, 5), the latter of which served as his original Complaint. The Court denied, without prejudice, his Motion for a Temporary Restraining Order ("TRO") for failure to properly address notice under Federal Rule of Civil Procedure 65(b)(1)(B). The Court ordered Anyadike to meet and confer with Defendants and provide a proposed schedule designed to timely consider his request for a preliminary injunction. Order, Nov. 4, 2015, ECF No. 8.

On November 19, 2015, Anyadike filed an Amended Complaint (ECF No. 9), asserting the following claims: (1) violation of procedural due process pursuant to 42 U.S.C. § 1983; (2) violation of substantive due process pursuant to 42 U.S.C. § 1983; (3) breach of implied and express contract; (4) tortious interference; (5) violation of Fourteenth Amendment Equal Protection Rights; (6) violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, the Civil Rights Act of 1864; (7) discrimination under the Americans with Disabilities Act of 1990 (ADA) and § 504 of the

3

Rehabilitation Act; and (8) intentional infliction of emotional distress.  Also on that day, Anyadike

filed a Motion for Ex Parte Temporary Restraining Order Pending Hearing for Preliminary

Injunction (ECF No. 10),  seeking to resume his studies to finish the final semester.  *See* Mot. 7, ECF

No. 10.  The Court held a hearing regarding Anyadike's Motion on December 21, 2015.  *See* ECF

No. 31.  After the Hearing, the Court ordered that the parties file supplemental briefing regarding

Anyadike's duty to exhaust administrative remedies.  Order, Dec. 31, 2015, ECF No. 34.  The parties

filed their respective briefing on January 5, 2016.  Defs.' Br. Exhaustion Remedies, ECF No. 35;

Pl.'s Supp. Br., ECF No. 36.

## II.    LEGAL STANDARD

The Fifth Circuit set out the requirements for a preliminary injunction in *Canal Authority of*

*Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).  To prevail on a preliminary injunction, the

movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits;

(2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may

cause the opposing party; and (4) that granting the injunction is not adverse to the public interest.

*Id.*; *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

To qualify for a preliminary injunction, the movant must clearly carry the burden of

persuasion with respect to all four requirements.  *Karaha Bodas Co. v. Perusahaan Pertambangan*

*Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).  If the movant fails to establish

any one of the four prerequisites to injunctive relief, relief will not be granted.  *Women's Med. Ctr.*

*of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001).  A movant who obtains a preliminary

injunction must post a bond to secure the non-movant against any wrongful damages it suffers as a

result of the injunction.  Fed. R. Civ. P. 65(c).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985) (citing *Canal*, 489 F.2d at 572).  A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).  Even when a movant satisfies each of the four *Canal* factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light Co.*, 760 F.2d at 621.  The decision to grant a preliminary injunction is to be treated as the exception rather than the rule. *Id*.

## III.   ANALYSIS

Anyadike seeks a preliminary injunction based on the following claims: (1) violation of procedural due process pursuant to 42 U.S.C. § 1983; (2) violation of substantive due process pursuant to 42 U.S.C. § 1983; and (3) violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. *See* Hr'g Tr. at 150.  The Court accordingly confines its analysis to these claims.

### A.   Plaintiff Was Not Required to Exhaust Administrative Remedies Before Bringing This Action.

Defendants argue that Anyadike has failed to exhaust administrative remedies, as he "admitted to knowing about the grievance process and admitted to never utilizing it," and "concluded, with no supporting evidence, that the [available] remedies were a rubber stamp." Defs.' Br. Exhaustion Remedies 1, ECF No. 35.  Anyadike avers that "[w]hile exhaustion of administrative remedies is generally a rule that would apply" to a dismissal from Vernon College, "exhaustion is

not required when the prescribed administrative remedy is plainly inadequate because either no remedy is available, the available remedy will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury." Pl.'s Supp. Br. 2, ECF No. 36 (quoting *Patsy v. Fla. Int'l Univ.*, 634 F.2d 900, 903 (5th Cir. 1981), *rev'd on other grounds*, 457 U.S. 496 (1982)). Anyadike argues that each such exception applies to him, and that "[e]xhaustion of administrative remedies is also not required for § 1983 claims." *Id.* at 2–4.

The Court finds that Anyadike was not required to exhaust administrative remedies before bringing these three claims. First, the Court finds that Anyadike is correct in asserting that the exhaustion of administrative remedies is not required for § 1983 claims. *See Patsy*, 457 U.S. at 516 ("Based on the legislative histories of both § 1983 and § 1997e, we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."). In addition, the Court finds that exhaustion is not required for Anyadike's § 1981 discrimination claim. *See Garrett v. Celanese Corp.*, No. 3:02-cv-1485-K, 2003 WL 22234917, at *4 (N.D. Tex. Aug. 28, 2003) (Kinkeade, J.); *see also Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 850–51 (E.D. Tex. 2014) ("The substantive analysis for discrimination claims asserted under both Title VII and § 1981 is virtually identical. Two differences between the two statutes, however, are their respective statute[s] of limitations and the requirement under Title VII that the employee exhaust administrative remedies.") (internal citations omitted). Thus, the Court may appropriately examine Anyadike's request for injunctive relief, even though he did not exhaust available administrative remedies.

**B.      Plaintiff Has Not Established That He Has a Substantial Likelihood of Success on the Merits.**

6

The Court must determine whether Anyadike has established all four *Canal* factors entitling him to a preliminary injunction. To do so, the Court first examines whether Anyadike has established he has a substantial likelihood of success on the merits for each of the three aforementioned claims. The Court addresses this first factor for each claim in turn.

       1.      <u>Plaintiff Has Not Established He Has a Substantial Likelihood of Success on the Merits as to his Claim for Violation of Procedural Due Process Under 42 U.S.C. § 1983.</u>

Anyadike argues his dismissal under the Attendance Policy was "disciplinary" and that "Defendants attempted to veil their transgressive actions by withdrawing Plaintiff from the [LVN Program] administratively under the veneer of an academic dismissal." Am. Compl. ¶¶ 41–42, ECF No. 9. He contends that Defendants violated his constitutional right to procedural due process by failing to provide him with: (1) notice of pending dismissal; (2) an equitable opportunity to be heard and defend himself against the allegations; and (3) related requirements to such notice and a hearing. *Id*. ¶ 44. Anyadike also points out that tardiness is classified under "Professional Conduct," among other violations Defendants construe as disciplinary, thus rendering the Attendance Policy disciplinary under its own terms. Hr'g Tr. at 90.

Defendants argue that Anyadike "incorrectly analyzes this matter as a disciplinary dismissal, when actually it is an academic dismissal," as the Attendance Policy "is based upon a nurse's practical experience in the field of nursing (clinicals), for which the nursing student is evaluated and graded." Mot. Dismiss 6, ECF No. 25. Defendants contend the Attendance Policy is "essential in order for its nursing students to meet the state licensure requirements," which require 1,398 clock hours of study, with 558 hours devoted to classroom instruction and 840 hours to clinical practice. *Id*. at 8 (citing 22 Tex. Admin. Code. § 214.9(a), (e)); Reply Defs.' Mot. Dismiss 4, ECF No. 30.

In *Goss v. Lopez*, the Supreme Court held that "due process requires, in connection with the suspension of a student from public school for disciplinary reasons, 'that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'" *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978) (quoting 419 U.S. 565, 581 (1975)). The Supreme Court later clarified that "[a]cademic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement." *Horowitz*, 435 U.S. at 89. In distinguishing the two, the Supreme Court analogized, "[l]ike the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id.* at 90. Thus, the Supreme Court concluded that "in the case of a dismissal for academic reasons, a hearing is not required under the due process clause." *Tobias v. Univ. of Tex. at Arlington*, 824 S.W.2d 201, 209 (Tex. App.—Fort Worth, 1991, writ denied) (citing *Horowitz*, 435 U.S. at 86 n. 3)).

In *Mathai v. Board of Supervisors of Louisiana State University*, a district court held that under *Horowitz*, "[d]ismissal from medical school for poor clinical performance, based in part on . . . *attendance*, should be considered *academic*." 959 F. Supp. 2d 951, 958 (E.D. La. 2013) (emphasis added) (internal citations omitted). On appeal, the Fifth Circuit upheld this holding, characterizing its conclusion that the plaintiff was "not fit to continue as a student" as "an undeniably academic issue." *Mathai,* 551 F. App'x 101, 103 (5th Cir. 2013) (citing *Shaboon v. Duncan,* 252 F.3d 722, 731 (5th Cir. 2001)). Furthermore, in *Perez v. Texas A&M University at Corpus Christi*,

when a former student argued that tardiness is a disciplinary matter, the Fifth Circuit observed that "[c]ourts have frequently concluded . . . that *absences and tardiness* in the higher education context may relate to a student's ability to perform *academically* and professionally." 589 F. App'x 244, 249 (5th Cir. 2014) (emphasis added); *see also Horowitz*, 435 U.S. at 91 n. 6 ("[T]imeliness may be as important [of a] factor in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness."). Similarly, the Fifth Circuit has characterized a student's absence on the first orientation and registration day for an advanced degree program as "academic" because "[t]he orientation was an important part of the cohort's academic program and included information regarding preparation for the dissertation." *Senu-Oke v. Jackson State Univ.*, 283 F. App.'x 236, 240 (5th Cir. 2008).

Other federal circuits have similarly distinguished between academic and disciplinary dismissals. For instance, the Tenth Circuit, citing Third Circuit reasoning, held that attendance is an "academic" requirement in a graduate school program, as "attendance at each class session was critical because the course was a practical one in counseling methods, involving actual participation and observation. The students were so informed and were told they could not be absent. Attendance was thus an academic requirement." *Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986) (citing *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986)). Additionally, in considering First, Sixth, and Seventh Circuit precedent, a district court recently set forth the principle that an academic dismissal occurs "where a student's scholarship or conduct reflects on the personal qualities necessary to succeed in the field in which he or she is studying and is based on at least partially subjective appraisal of those qualities." *Allahverdi v. Regents of Univ. of N.M.*, 05-277 JB/JDS, 2006 WL 1313807, at *12–13 (D.N.M. Apr. 25, 2006).

9

At the Hearing, the parties did not dispute that clinical attendance is crucial to success in the LVN Program. *See, e.g.*, Hr'g Tr. at 40–41 (Anyadike stating, "[I]n the classroom it's strictly theory. As far as when you're in clinicals, you apply it. I mean, I can tell you how to gauge blood pressure, the steps, but if you actually ask me to do it and I don't know how to do it, then I'm not competent in that skill."); *see also id.* at 113 (Denham stating, "[W]e advise very strongly that they are at class every day . . . .[I]f he misses a day or any student misses that day, they may miss vital information that will allow someone's health to be impacted in the future."). Furthermore, the parties do not dispute that the Texas Administrative Code sets forth academic requirements concerning clinical experience, including attendance, in order to graduate from a nursing program. *See* Hr'g Tr. at 64.

The Court finds that Supreme Court and Fifth Circuit precedent support classifying the Attendance Policy as academic, as it is undisputed that the Attendance Policy directly relates to one's fitness to practice the nursing profession. *See, e.g.*, *Perez*, 589 F. App'x at 249 ("[A]bsences and tardiness in the higher education context may relate to a student's ability to perform academically and professionally."); *see also Horowitz*, 435 U.S. at 91 n. 6 ("[T]imeliness may be as important [of a] factor in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness."). Thus, under this rationale, because his absences were academic, Anyadike was entitled to no more than the notice of dismissal he received. Therefore, he is unlikely to prevail on the merits of this claim.

However, Anyadike argues that the Attendance Policy, by its own definition, cannot be wholly academic. The Attendance Policy includes both absences and tardiness, and each instance of tardiness automatically counts as one hour of absence. *See id*. at 172. Hearing testimony provided that 10 of Anyadike's 63 hours in his attendance record reflected tardiness, which

Defendants' counsel inferred to be inherently disciplinary.

> Q (Defendants' counsel): So [dress code violations, professional behavior, and unsafe practice or actions] are all things that you can be dismissed for for disciplinary purposes, and those are different than academic purposes, right?
> A (Anyadike): Actually, under Section D [of the LVN Handbook], the first thing is clinical, and student[s] should receive record of attendance for definition of classroom tardiness.
> Q: Right, tardiness. *That's different than absences, right?* Is there a difference between tardiness and absence?
> A: No, because they are mixing it all together . . . .

Hr'g Tr. at 90–91 (emphasis added); *see also id.* Nevertheless, Defendants' pleadings consistently construe the Attendance Policy as academic. *See, e.g.*, Defs.' Mot. Dismiss 7–8, ECF No. 25; *see generally* Defs.' Br. Exhaustion Remedies, ECF No. 35. Furthermore, the LVN Handbook states elsewhere that tardiness is calculated as an hour of absence, rather than seeking to distinguish the treatment of tardiness from absence. *See* LVN Handbook 15, ECF No. 6.

However, in an abundance of caution, and in respecting the conflicting characterizations Vernon College assigns to its own Attendance Policy, the Court finds that even if Anyadike's dismissal was disciplinary, he was afforded sufficient procedural due process. Within the disciplinary dismissal context, the Supreme Court held that before a student is suspended, he "be given oral or written notice of the charges against him and, *if he denies them*, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581 (emphasis added). The Supreme Court extended this principle to dismissal from a public university's medical school. *See Horowitz*, 435 U.S. at 85.

In this case, Anyadike does not deny the actual *charge*, the fact he exceeded the 60-hour threshold, but rather contests the *underlying policy giving rise to that charge*. As Anyadike alleges in his Amended Complaint, he "accrued 54 hours toward the maximum 60 hours of time allowance

11

per the LVN attendance policy and had therefore specifically requested such accommodation *so that he would remain under* the 60-hour limit." Am. Compl. ¶ 25 (emphasis added); *see also* Hr'g Tr. at 33 ("My understanding was that [being absent on June 8, 2015] would cause me to go over my 60 hour threshold."). Thus, Anyadike does not contest that he *violated* the Attendance Policy, thereby creating a fact issue necessitating an administrative hearing. *See Horowitz*, 435 U.S. at 87 (stating that the purpose of a disciplinary hearing is "*determination* as to the fact" resulting in the disciplinary charge) (emphasis added). Anyadike's assertion that the Policy should have distinguished between "excused" and "unexcused" absences within that 60 hours[2] is an attack on the underlying policy *animating* the charge, not the charge itself. In fact, he fully admits this precise distinction: "Yes, this [document showing 63 hours of absences] is a document of my attendance, but from the beginning, I never agreed *how* the attendance was assessed." Hr'g Tr. at 78 (emphasis added).

For the aforementioned reasons, the Court finds that Anyadike was afforded proper due process, even if the dismissal was characterized as "disciplinary." Therefore, Anyadike does not demonstrate a likelihood of success on the merits as to this claim.

Within his claim for procedural due process, Anyadike also alleges that he has a "constitutionally recogni[z]ed and protected property right to his education" at Vernon College. Am. Compl. ¶ 37, ECF No. 9. Defendants assert that Anyadike does not enjoy a property interest in his continued education at Vernon College, as neither the Supreme Court nor the Fifth Circuit have

---

[2] As outlined in the subsequent substantive due process section, even if Anyadike were to credibly attack the policy itself, his stated grounds for doing so still fail. There, the Court holds Anyadike does not have the liberty interest he asserts would necessitate "excused" absences resulting from his choice to work while attending Vernon College. *See infra* Part III.B.2.

decided whether students have a liberty or property interest in public postsecondary education. Defs.' Mot. Dismiss 5, ECF No. 25.

"The procedural protection of property safeguards the security of interests an individual has already acquired in specific benefits." *Tobias*, 824 S.W.2d at 208 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972)). "[T]o have a property interest in a benefit . . . .[t]here must be more than a mere unilateral expectation to the benefit. Indeed, the individual must have a legitimate claim to the benefit." *Tobias,* 824 S.W.2d at 208 (citing *Roth*, 408 U.S. at 577). "Property interests are not created by the Constitution," but rather "must find an origin in an independent source, such as some aspect of state law." *Id*.

"Texas law makes no such provision for undergraduate or graduate education at state universities." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 n. 1 (Tex. 1995). Texas courts have declined to conclusively decide whether postsecondary students have a property interest in continuing their higher education if due process has been sufficiently afforded. *See, e.g.*, *Tobias*, 824 S.W.2d at 209 ("Although we have serious doubts as to a constitutionally protectible property right in a grade or in a grade grievance procedure, we need not decide that issue in this case. Even assuming that appellant had a protectible property right that gave rise to procedural rights under the due process clause, the facts in the present case show that appellant was afforded adequate procedural due process."). Similarly, this Court need not decide whether Anyadike has a constitutionally protected property interest in continued enrollment because even if he did, the Court has already determined that Anyadike was afforded sufficient procedural due process. *See supra* Part III.B.1.

For all the aforementioned reasons, Anyadike has not demonstrated he is substantially likely

to prevail on the merits as to this claim, such that the "extraordinary and drastic remedy" of granting a preliminary injunction is appropriate.  *See White*, 862 F.2d at 1211.  Thus, Anyadike's Motion requesting a preliminary injunction is **DENIED** as to this claim.

> 2. <u>Plaintiff Has Not Established He Has a Substantial Likelihood of Success on the Merits as to his Claim for Violation of Substantive Due Process Under 42 U.S.C. § 1983.</u>

Anyadike alleges he "was penali[z]ed on repeated occasions for attending to employment-related commitments that at times, would require him to miss class either partially or for the entire school day."  Am. Compl. ¶ 56, ECF No. 9.  He claims the Attendance Policy was thus "so unreasonable and unduly burdensome" and "infringed on Plaintiff's substantive due process right to pursue liberty interests that were not only constitutionally fundamental but were also necessary in order to pay tuition and cover cost of living expenses."  *Id*. ¶ 57.  He concludes that the Attendance Policy fails rational basis scrutiny because it (1) "categorically fails to acknowledge absences for valid reasons;" (2) "serves no underlying government interest," and (3) "does [not] comport with sound education policy."  *Id*. ¶ 59.  At the Hearing, Anyadike specifically argued the Attendance Policy is irrational because under one conceivable set of facts, in which a student missed 60 classroom hours, a student could hypothetically graduate from Vernon College but be ineligible for licensure by the state Board of Nursing.  *See* Hr'g Tr. at 115.

Defendants argue that "[w]hile Plaintiff's personal plight of being a working student is not atypical and certainly difficult, it does not rise to the level of constitutional deprivation."  Defs.' Mot. 9, ECF No. 25.  Defendants further rationalize the Policy as it relates to Texas licensure: "If a nursing student misses too many clinical sessions (i.e., working with patients), the school does not even have the discretion to promote the student toward licensure; instead, the school is prohibited

14

by law from certifying that the individual is competent to provide health care." *Id*. at 7.  Defendants argue that Anyadike "has pleaded no facts to place in doubt that the determination of sixty hours maximum absence was not carefully determined or unreasonable," or in other words, that the attendance policy was "unreasonable and oppressive." *Id*. at 8.

The Court finds that Anyadike was not deprived of a substantive due process right by working and incurring absences while attending Vernon College, and this Court is unaware of any precedent supporting a constitutional right to be a working student.  The Court further finds that Anyadike's arguments invert the rational basis test.  The Attendance Policy does not fail rational basis scrutiny by *failing* to serve the governmental interest under *one* reasonably conceivable state of facts, but rather, "enjoys a strong presumption of validity, and . . . must be upheld if there is *any* reasonably conceivable state of facts that *could* provide a rational basis for the classification." *Gardner v. Children's Med. Ctr. of Dall.*, 402 S.W.3d 888, 891–92 (Tex. App.—Dallas, 2013, no pet.) (citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319–20 (1993) (emphasis added)).  After all, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) (per curiam).

Here, the parties do not dispute that under at least one reasonably conceivable set of facts, the Attendance Policy is rationally related to the state interest of producing "competent" or "good, functional" nurses.  Hr'g Tr. at 151; Defs.' Mot. Dismiss 7, ECF No. 25.  For instance, the Attendance Policy prevents Anyadike, with his record of missed clinical and classroom hours, or a student who missed only clinical hours, from graduating.  On these sets of facts, the Attendance Policy rationally relates to the state interest of producing competent nurses because these students

15

would also fail to meet the number of hours required in order to take state licensure exams and enter the nursing profession. *See* Hr'g Tr. at 114–16. Thus, the Attendance Policy survives rational basis scrutiny, and Anyadike has failed to establish he has a substantial likelihood of success on the merits as to this claim. Accordingly, Anyadike's Motion requesting a preliminary injunction is **DENIED** as to this claim.

3.   <u>Plaintiff Has Not Established He Has a Substantial Likelihood of Success on the Merits as to his Claim for Violation of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981</u>.

Anyadike claims that "[a]s the only Black male to matriculate with his cohort, Plaintiff is a member of a protected class." Am. Compl. ¶ 129, ECF No. 9 (emphasis omitted). He further alleges that "Defendants have a history of prejudicial treatment toward minorities as one of Plaintiff's classmates, an African-American female who had an excellent academic record and no prior disciplinary issues, was also dismissed from the [Program] without justification nor was she afforded due process before being expelled." *Id*. ¶ 132. Anyadike further claims that "[h]is peers were afforded opportunities to redeem their attendance record through arbitrary measures granted by Defendants. Plaintiff however was given no such opportunities." *Id*. ¶ 131. Anyadike asserts this opportunity took the form of earning class credits for attending a school "sporting event." Hr'g Tr. at 47.

Defendants claim that the "sports day" to which Anyadike refers is a day each October in which "all students" were invited to participate in activities "as a way to gain hours of classes, not for reducing absences." *Id*. at 169–70. Defendants further allege that Anyadike failed to establish a Title VI racial discrimination claim as a result of disparate impact because "[P]laintiff[] must demonstrate that a facially neutral practice has a racially disproportionate impact." Mot. Dismiss

16

17, ECF No. 25.  Defendants argue that "Plaintiff has failed to allege any facts that non-blacks were treated differently with respect to the attendance policy."  *Id*.

To prevail under a Title VI claim, Anyadike must prove that: (1) Defendants engaged in intentional discrimination based on race, color, or national origin; and (2) Defendants received federal financial assistance.  42 U.S.C. § 2000(d); *see also Alexander v. Sandoval*, 532 U.S. 275, 303 (2001).  To establish a prima facie case of discrimination under 42 U.S.C.  § 1981, Anyadike must establish that "(1) he is a member of a racial minority; (2) the defendant[s] had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."  *Dunaway v. Cowboys Nightlife, Inc.*, No. 10-30663, 2011 WL 3557091, at *3 (5th Cir. 2011) (citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001)).  "Such activities include the making and enforcement of contracts."  *Dunaway*, 2011 WL 3557091, at *3 (quoting 42 U.S.C. § 1981(a)–(b)).

Anyadike failed to present evidence as to how Vernon College engaged in "intentional discrimination."  In fact, when asked at the Hearing, "[D]o you know of any other students that exceeded the absence policy and were *not* dismissed?," he replied, "No."  Hr'g Tr. at 84 (emphasis added).  The Court finds that Anyadike has failed to establish a Title VI or § 1981 claim.  Thus, Anyadike does not demonstrate he is substantially likely to prevail on the merits of these claims and his Motion as to this claim is **DENIED**.

Ultimately, the Court finds that as to each of these three claims, Anyadike has failed to establish he has a substantial likelihood of success on the merits.  Therefore, the Court finds it is inappropriate to grant the "extraordinary and drastic remedy" of a preliminary injunction.  *White*, 862 F.2d at 1211.  However, out of an abundance of caution, the Court will also address the second

*Canal* factor.

### C.   Anyadike Has Failed to Demonstrate He Will Suffer Irreparable Harm if the Injunction Is Denied.

In his Amended Complaint, Anyadike alleged he will suffer irreparable harm if the injunction is denied because he "declared his intent to relocate to New York City by the start of [2016] so that he may begin an LVN-to-AND transition program[] by the Spring 2016 semester.  He will therefore be unable to prolong his education at Vernon College past [the Fall 2015 semester]."  Am. Compl. ¶ 32, ECF No. 9.  At the Hearing, Anyadike did not dispute that this allegation of irreparable harm may no longer be prevented because his class already graduated, and he therefore cannot relocate to New York City before January 2016 to begin an advanced nursing program.  Hr'g Tr. at 4 ("He would have liked to have been able to enroll in an advanced nursing program starting in January. That's not available any more . . . .").

At the Hearing, Anyadike alleged that the irreparable harm he faces is twofold: (1) the emotional toll he has endured from not graduating on time; and (2) the ongoing financial consequence of not enjoying an increased earning potential as a practical nurse or through an additional degree.  Hr'g Tr. at 42 ("There is a financial aspect of it.  I'm still kind of stuck in menial jobs or whatever.  I don't get to practice as a nurse, which would definitely improve my situation in life.  Having to tell family and friends that, hey, I didn't make it for this reason, it's taken a toll.").

"The standard for determining whether harm is irreparable is tied closely to the purpose of the preliminary injunction.  A preliminary injunction is used to 'prevent the judicial process from being rendered futile by defendant's action or refusal to act.'"  *Terex Corp. v. Cubex Ltd.*, No. 3:06CV1639-G, 2006 WL 3542706, at *9 (N.D. Tex. Dec. 7, 2006) (Fish, C. J.) (citing *Canal*, 489

F.2d at 573). In the Fifth Circuit, for harm "[t]o be considered irreparable, the injury in question must be imminent and cannot be speculative." *ADT, LLC v. Capital Connect, Inc.*, No. 3:15-CV-2252-G, 2015 WL 6549277, at *14–18 (N.D. Tex. Oct. 28, 2015) (Fish, J.). In other words, "[t]o be entitled to an injunction the plaintiff must establish that he . . . is *immediately in danger* of sustaining[] some direct injury as a result of the challenged conduct." *United States v. Emerson*, 270 F.3d 203, 262 n. 64 (5th Cir. 2001). Furthermore, the irreparable injury must leave the plaintiff with "no other adequate legal remedy.*" H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs.*, No. 3:09-CV-00390-L, 2009 WL 1766095, at *3 (N.D. Tex. June 23, 2009) (Lindsay, J.) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)).

The Northern District of Texas has previously explained that delay in seeking relief is a consideration when analyzing the threat of imminent and irreparable harm. In *Wireless Agents, LLC v. T-Mobile USA, Inc.*, the court explained that "[d]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, . . . a substantial period of delay . . . militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." No. 3:05-cv-94-D, 2006 WL 1540587, at *3 (N.D. Tex. June 6, 2006) (Fitzwater, J.) (citing *High Tech Med. Instrumentation, Inc., v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (5th Cir. 1995)).

As this Court previously stated, "Anyadike's several-month delay in filing until weeks before he would have otherwise graduated from the LVN Program not only limits the Court's ability to analyze Plaintiff's claims, it militates against a finding of irreparable harm." Order 5, Nov. 20, 2015, ECF No. 18. Furthermore, the Court observed that "[a]fter the Court dismissed his first motion for not complying with the notice requirements of [Rule] 65, Anyadike waited another two weeks to file

19

the same motion and provide Defendants notice of this suit by mail." *Id.* (citing Order, Nov. 4, 2015, ECF No. 8). Anyadike did not provide a reasonable rationale as to why he waited six months to file this lawsuit.[3] Thus, the Court again finds that Anyadike's continued delay in pursuing relief militates against the issuance of a preliminary injunction.

In addition, the Court finds that the emotional toll Anyadike asserts from not graduating on time is not appropriately rectified through the extraordinary remedy of a preliminary injunction. Anyadike did not allege that this emotional harm stems from anything other than not graduating in December 2015, an event that has already occurred, posing no "immediate . . . danger." *See Emerson*, 270 F.3d at 262 n. 64. In other words, as the emotional "toll" of not graduating was already sustained; the judicial process has been "rendered futile" as to *preventing* that particular harm. *Terex*, 2006 WL 3542706, at *9.

Anyadike also posits that the economic harm he faces justifies a preliminary injunction, as waiting until this case would be resolved through the due course of litigation would limit the length of time barring him from pursuing higher earning potential as a nurse. *See, e.g.*, Hr'g Tr. at 8 ("[W]e're *not asking for anything extraordinary* here other than the *timing* of it. What we're asking for is for him to be able to complete his required course work, complete the required clinical hours that are required by the Texas Administrative Code and the Texas Board of Nursing.").

---

[3] It is true that if the plaintiff provides a "reasonable explanation for the delay," that courts may permit such delay when determining the imminence of alleged irreparable harm where delays were "'caused by [plaintiff's] good faith efforts to investigate facts and law." *ADT*, 2015 WL 6549277, at *18 (internal citations omitted). However, Anyadike has never directly asserted a reasonable explanation for the delay, other than alleged economic costs incurred by preparing for this case. Hr'g Tr. at 43–44. ("[A]s far as just time that I've invested into this—seeking redress, it's really consumed a lot of my time. Monetarily, . . . . [t]he amount of resources that I have had to invest in this, because this is not just—you have to do your due diligence when you're bringing a claim in federal court. That I do know, I mean, long hours of research.)"

As to the economic harm Anyadike faces through not enjoying a higher earning potential as a result of graduating, the Court finds that this, too, is beyond the scope of what a preliminary injunction is designed to prevent. *See Emerson*, 270 F.3d at 262. Anyadike does not demonstrate that an award of damages would be inadequate for this harm. "Irreparable harm" is harm "that *cannot be adequately measured or compensated by money* and is therefore often considered remediable by injunction." *Irreparable Injury*, Black's Law Dictionary (10th ed. 2014) (defining "irreparable injury" as synonymous with "irreparable harm") (emphasis added). *See also Law v. William Marsh Rice Univ.*, 123 S.W.3d 786, 794 (Tex. App.—Houston [14th Dist.] 2003) ("[Plaintiff] will not be able to return to Rice [University] for two semesters and, therefore, will not have the opportunity to pursue any job with his degree qualifications for at least a year . . . . Such harm, however, can be compensated by monetary damages.")); *Ben-Yonatan v. Concordia Coll. Corp.*, 863 F. Supp. 983, 986 (D. Minn. 1994) ("The harm [the plaintiff] alleges is the loss of one year compensation as a medical doctor, a harm which is clearly compensable by monetary damages.").

For the aforementioned reasons, the Court finds that Anyadike has failed to establish that he faces irreparable harm. In addition to Anyadike's failure to show he is substantially likely to prevail on the merits, Anyadike has failed to demonstrate that he is entitled to a preliminary injunction as to this second *Canal* factor. Therefore, Anyadike's Motion for Ex Parte Temporary Restraining Order Pending Hearing for Preliminary Injunction is **DENIED**. The Court need not proceed to the remaining *Canal* factors.

## IV.   CONCLUSION

Based on the foregoing, Defendant's Motion seeking a preliminary injunction (ECF No. 10)

is **DENIED.**  In addition, the Court **ORDERS** that Plaintiff provide briefing as to the arguments concerning immunity in Defendants' Motion to Dismiss (ECF No. 25), on or before  **January 25, 2016**.

      **SO ORDERED** on this **11th day** of **January, 2016.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**